JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000
John A. Snyder (JS 4786)
Peter C. Moskowitz (PM 8845)

ATTORNEYS FOR DEFENDANT
DOUGLAS ELLIMAN, LLC, OPERATING
AS PRUDENTIAL DOUGLAS ELLIMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIANA CANNON and JANE KLARIS,

                     Plaintiffs,

    -against-                          06 CV 7092 (NRB) (MHD)

DOUGLAS ELLIMAN, LLC, OPERATING
AS PRUDENTIAL DOUGLAS ELLIMAN,
ET AL.,

                     Defendants.

---

### DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

       Defendant Douglas Elliman, LLC operating as Prudential Douglas Elliman ("Defendant"), by and through its attorneys, Jackson Lewis LLP, hereby submits this Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried, pursuant to the Rules of this Court, Local Rule 56.1 of the Southern District of New York and Rule 56 of the Federal Rules of Civil Procedure in support of its Motion For Summary Judgment.

For purposes of this Motion only, Defendant submits that there are no genuine issues as to the following material facts.[1]

**Plaintiffs' Engagement To Provide Services To Defendant**

Diana Cannon

1.  Plaintiff Diana Cannon ("Cannon") was engaged as an independent contractor by Defendant on January 9, 2004 to provide real estate sales services for Defendant. (Deposition of Diana Cannon, dated July 31, 2008, at 21-22, 88 (hereinafter "Cannon Depo.") (Ex. 1); Snyder Aff. Ex. 10).

2.  Cannon received her real estate salesperson license in January 2004. (Cannon Depo. at 7).

3.  To memorialize her engagement, Cannon entered into a written agreement with Defendant, dated January 9, 2004 ("Cannon IC Agreement")(Snyder Aff. Ex. 10).

4.  After conversations with Plaintiff Jane Klaris ("Klaris"), Cannon became engaged to provide services to Defendant as a salesperson at the 55 Wall Street real estate development ("55 Wall"). (Cannon Depo. at 123-25; Snyder Aff. Ex. 11.)

5.  Cannon began performing sales services at 55 Wall in early February 2008. (Cannon Depo. at 123-25.)

6.  While engaged at 55 Wall, Cannon's sale of real estate for Defendant other than at 55 Wall remained governed by the Cannon IC Agreement. (Cannon Depo. at 123-25.)

---

[1] Copies of the excerpts of deposition transcripts and documents cited to herein are attached as exhibits to the accompanying Affirmation of John A. Snyder, Esq. (the "Snyder Aff."), dated February 13, 2009. All references to "Ex.__" refer to exhibits attached to the Snyder Aff.

7. Cannon ceased providing sales services to Defendant at 55 Wall on July 14, 2006. (Cannon Depo. at 35.)

8. On August 21, 2006, Cannon ceased her engagement as an independent contractor for Defendant under the Cannon IC Agreement. (Cannon Depo. at 43.)

9. On October 16, 2006, Cannon transferred her real estate salesperson license to Marketing Directors, where she worked for sixteen days between October 4, 2006 and October 20, 2006. She voluntarily resigned from Marketing Directors on October 20, 2006. (Cannon Depo. at 86, 251, 253; Snyder Aff. Ex. 12.)

10. After cessation of her engagement with Defendant, Cannon interviewed for employment with three companies in the interior design field. (Cannon Depo. at 255.)

11. Cannon's real estate salesperson's license expired on January 9, 2008. (Snyder Aff. Ex. 13.)

12. Cannon presently is not seeking employment in real estate sales. (Cannon Depo. at 253.)

13. Cannon owns a company called Cannon-Klaris Design, which is an interior decorating company. She started the company in 1999 and operated it through approximately 2004. Cannon did not operate Cannon-Klaris Design while she was engaged to provide services to Defendant. Cannon presently operates Cannon-Klaris Design on various jobs. (Cannon Depo. 7-10.)

14. Cannon-Klaris Design is not a real estate business. It is an interior design business. (Cannon Depo. at 23.)

Jane Klaris

15.     Plaintiff Jane Klaris ("Klaris") was engaged as an independent contractor by Defendant on January 9, 2004 to provide real estate sales services for Defendant. (Deposition of Jane Klaris Vol. 1, dated July 18, 2008, at 62 (hereinafter "Klaris Depo. Vol. 1") (Ex. 2); Snyder Aff. Ex. 14.)

16.     Klaris was engaged to provide services to Defendant as an on-site salesperson at the 55 Wall real estate development. Klaris began performing on-site sales services at 55 Wall in February 2006. (Klaris Depo. Vol. 1 at 65.)

17.     Klaris ceased providing sales services to Defendant at 55 Wall on May 10, 2006, when she moved to a different real estate development for Defendant known as Tribeca Summit. (Deposition of Jane Klaris Vol. 2, dated August 1, 2008, at 314-15 (hereinafter "Klaris Depo. Vol. 2") (Ex. 3).)

18.     Klaris's employment at Tribeca Summit ended in September 2006. (Klaris Depo. Vol. 2 at 328.)

**Cannon's Claimed Commissions Under the Cannon IC Agreement**

**930 Park Avenue 2N**

19.     Pursuant to the Cannon IC Agreement, Cannon's sole compensation was to be "commissions in accordance with the then current [Defendant] commission schedule, which may be revised from time to time at the sole discretion of [Defendant]." (Snyder Aff. Ex. 10 at ¶ 2; Cannon Depo. at 25.)

20.     The commission schedule in effect for Defendant's real estate sales force did not change during the period Cannon provided services to Defendant. (Cannon Depo. at 49-50.)

4

21. Defendant's policy explicitly provides that, "[a] departing agent's commission split will automatically revert back to 50% on all deals under contract." Therefore, Cannon only was entitled to a fifty percent (50%) commission split for sale of 930 Park because she was no longer engaged as a sales agent for Defendant when 930 Park closed. (Snyder Aff. Ex. 15.)

22. Because 930 Park was the first unit she sold in the year 2006, Cannon was required to pay a 1% listing fee credit on that sale. (Deposition of Norman Alston, Vol. 2, dated June 3, 2008 (hereinafter "Alston Depo. Vol. 2") at 295-96 (Ex. 4).)

23. Cannon was paid a forty-nine percent (49%) commission for her services in the sale of apartment unit 2N located at 930 Park Avenue, which closed on September 14, 2006. (Cannon Depo. at 35-36); Ex. 16.)

## 55 Wall Street Unit 615

24. Pursuant to the Cannon IC Agreement, while performing services for Defendant, Cannon was required to "adhere to all [Defendant] policies as the same may be amended from time to time at the sole discretion of [Defendant]." (Snyder Aff. Ex. 10 at ¶ 4(a).)

25. Cannon received a copy of Defendant's "DE Brokerage Policies" dated April, 2004 by retrieving it off of Defendant's computer network. (Cannon Depo. at 91.)

26. Defendant's "DE Brokerage Policies" dated April, 2004 did not change during the period Plaintiffs provided services to Defendant. (Deposition of Karen Chesleigh, dated May 5, 2008, at 102 (hereinafter "Chesleigh Depo.") (Ex. 5).)

27. Defendant's policy provides that "If an agent has been affiliated with Douglas Elliman for a minimum of six months and has earned gross sales commissions of at least $150,000 for the current year, or if the agent is projected, in the opinion of his or her sales

5

manager, to meet the $150,000 level, then on the sale of personal residence, DE will not charge a commission." Cannon understood this policy to also apply to agent purchases of Defendant-brokered real estate. Cannon admitted that the policy only applies to gross commissions earned or projected in the agent's current year. (Snyder Aff. Ex. 17; Cannon Depo. at 113-15.)

28. At the time her purchase of unit 615 at 55 Wall closed on August 30, 2006, Cannon had earned $74,500.00 in gross commissions for the year 2006. (Snyder Aff. Exs. 16, 18.)

### Plaintiffs' Claims For Commissions On Units At 55 Wall

29. Plaintiffs presently seek commissions for the sale of thirty-five (35) apartment units at 55 Wall: 500, 502, 506, 542, 552, 554, 605, 606, 610, 612, 613, 615, 622, 624, 625, 628, 635, 706, 710, 715, 722, 724, 725, 728, 733, 810, 812, 814, 815, 816, 832, 834, 905, 910 and 945. (Cannon Depo. at 221; Klaris Depo. Vol. 2 at 283-84; Snyder Aff. Ex. 19.)

#### Plaintiffs Are Not Entitled To Commissions For The Seven 55 Wall Units Sold By Corcoran Sunshine.

30. Prior to February 1, 2006, Corcoran Sunshine Marketing Group ("Sunshine") was the exclusive marketing agent for 55 Wall. (Snyder Aff. Ex. 20.)

31. On February 1, 2006, Defendant took over as the exclusive marketing agent for 55 Wall. (Cannon Depo. at 130; Snyder Aff. Ex. 20.)

32. Cannon admitted that she would not be entitled to any commission on 55 Wall apartment units, if they were sold by Sunshine. (Cannon Depo. at 229.)

33. Klaris admitted that she would not be entitled to any commission on 55 Wall apartment units if they were sold by Sunshine. (Klaris Depo. Vol. 1. at 230.)

34. On-site salespeople at 55 Wall knew they were not going to be paid commissions on units previously sold by Sunshine and did not expect to be paid. (Deposition of Atoussa Haskin, dated October 13, 2008, at 73, 155 (hereinafter "Haskin Depo.") (Ex. 6); Deposition of Caroline Grane, dated October 10, 2008, at 75 (hereinafter "Grane Depo.") (Ex. 7).)

35. Of the apartment units at 55 Wall for which Plaintiffs seek commissions, units 506, 552, 610, 613, 635 and 706 were marketed and sold by Sunshine, which is listed as the "Selling Agent" on each unit's closing statement. (Snyder Aff. Ex. 18.)

36. Defendant did not receive any commissions on units 506, 552, 610, 613, 635 and 706, which were marketed by Sunshine. (Snyder Aff. Ex. 18.)

<u>Plaintiffs Are Not Entitled To Commissions For The Six 55 Wall Apartment Units Excluded From Commission Eligibility By The Developer</u>

37. The developer of the 55 Wall project, Witkoff Group ("Witkoff"), set aside six certain apartment units as non-eligible for commission. The identity of these six developer-excluded units changed periodically depending on the developer's needs and Defendant was not to receive a commission for the sale of any such units. (Deposition of I. Dolly Lenz, dated October 7, 2008, at 128-30 (hereinafter "Lenz Depo.") (Ex. 8).)

38. The sales force at 55 Wall did not expect to be paid for developer-excluded units. (Haskin Depo. at 155; Grane Depo. at 165.)

39. During the period Plaintiffs performed services for Defendant at 55 Wall, apartment units 500, 502, 605, 625 and 725 were set aside by the developer as excluded from commission eligibility. These units were sold to developer-sponsored business entities and

Defendant did not receive a commission for any of them. (Snyder Aff. Ex. 18; Affidavit of Kenneth I. Haber, dated February 12, 2009 at ¶ 5 (hereinafter "Haber Aff.").)

> ### Plaintiffs Are Not Entitled To Commissions For The Five Units Excluded From Commission Eligibility Because They Were Procured By Senior Management.

40. When Defendant took over as the exclusive sales and marketing agent for 55 Wall, the developer asked Howard Lorber, Defendant's Chairman, to solicit his friends and family to be purchasers for certain apartment units in order to generate interest in the development. (Lenz Depo. at 130; Deposition of Howard Lorber, dated September 24, 2008, at 87-88, 91 (hereinafter "Lorber Depo.") (Ex. 9).)

41. Howard Lorber agreed to assist the developer by arranging for friends and family, including himself, to purchase five or six apartment units at 55 Wall. Because the deal was between Mr. Lorber and the developer, the salespeople at 55 Wall had nothing to do with the sale or purchases of these units. Therefore, the sales force was not entitled to commissions on these units. (Lorber Depo. at 82, 88).

42. Apartment units 606, 710, 612, 722 and 810 at 55 Wall were procured through the efforts of Mr. Lorber. These units were not eligible for commission to the on-site sales force, including Plaintiffs. (Lorber Depo. at 83, 85; Haber Aff. at ¶ 4).

43. The sales force at 55 Wall did not expect to be paid for apartment units procured by Howard Lorber. (Haskin Depo. at 155.)

> ### Plaintiffs Are Not Entitled To Commissions For The Units For Which Contracts Were Signed During The Time Period Where Plaintiffs Were Not Engaged As On-Site Salespeople.

44. Cannon testified that salespeople at 55 Wall were not entitled to commissions for apartment units sold by Defendant, unless they were engaged as salespeople at

8

55 Wall during the period the sales contract was signed regardless of whether they were actually working on-site on that particular day. (Cannon Depo. at 222-23; Klaris Depo. Vol. 2 at 284; Haskin Depo. at 72.)

45. Contracts for 55 Wall apartment units 812, 814, 816, 832 and 905 were signed outside the time period where Cannon was engaged as an on-site salesperson at 55 Wall. (Snyder Aff. Ex. 21.)[2]

46. Contracts for 55 Wall apartment units 500, 502, 506, 605, 625, 722, 725, 728, 812, 814, 816, 832 and 905 were signed outside the time period where Klaris was not engaged as an on-site salesperson at 55 Wall. (Snyder Aff. Ex. 21.)

### Plaintiffs Are Not Entitled To Commissions For The Four 55 Wall Apartment Units For Which The Sales Transaction Never Closed.

47. Klaris is not seeking commissions on apartment units at 55 Wall where the sales transaction did not close. (Klaris Depo. at 253.)

48. Cannon admitted that on-site salespeople at 55 Wall were not entitled to commission on apartment units that did not close. (Cannon Depo. at 38-39, 118.)

49. Of the apartment units at 55 Wall for which Plaintiffs seek commission, units 500, 502, 812 and 834 did not close and Defendant did not receive commissions on these units. (Haber Aff. at ¶ 6; Snyder Aff. Exs. 18, 22.)

---

[2] Only the cover and signature page of the purchase contracts are attached to the Snyder Aff., but the full contracts can be produced if deemed necessary. We have also redacted certain sensitive personal information from these excerpts of the contracts.

JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000

By: _____
John A. Snyder (JS 4786)
Peter C. Moskowitz (PM 8845)

ATTORNEYS FOR DEFENDANTS
DOUGLAS ELLIMAN, LLC, OPERATING
AS PRUDENTIAL DOUGLAS ELLIMAN

Dated:   February 13, 2009
         New York, New York